UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| TERRI L. BEESON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:12 CV 2197 CDP |
| CAROLYN W. COLVIN[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

This is an action for judicial review of the Commissioner's decision denying Terri Beeson's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 405(g), *et seq*. Judicial review of the Commissioner's final decision under Title II is available under Section 205(g) of the Act. 42 U.S.C. § 405(g). I will remand this case, because the ALJ's residual functional capacity determination was not supported by substantial evidence.

## **Procedural History**

On October 20, 2008, Terri Beeson filed an application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and she alleged an onset date of July 28, 2008. Beeson's claim was initially

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. As such, she should be substituted for Michael J. Astrue as the defendant in this suit. Fed. R. Civ. P. 25(d).

denied, and she appealed the denial to an administrative law judge (ALJ).[2] After a hearing on February 23, 2010, the ALJ determined that Beeson was not "disabled" under the Act. The Appeals Counsel denied Beeson's request for review, and the ALJ's decision stands as the final decision of the Commissioner.

**Evidence Before the ALJ**

At the time of the hearing, Beeson was 49 years old, 5' 5" in height, and weighed 190 pounds. She was a pack-a-day smoker until two months before the hearing. Beeson finished the eleventh grade, achieved her GED, and earned a degree as a licensed practical nurse (LPN) from nursing school. She worked as an LPN for a Veterans Administration Hospital for three years prior to the onset of her alleged disability, and prior to that, she worked for fifteen years as an LPN for a private hospital. Beeson's disability application stated that she became disabled on July 28, 2008, because of histoplasmosis, sleep apnea, bulging disks, and fibromyalgia.[3] She stated that these conditions resulted in tiredness, pain, shortness of breath, the inability to lift, and trouble walking from the parking lot into the building, which limited her ability to work.

---

[2] Missouri participates in a modified form of the disability determination procedures, which eliminates the reconsideration step in the administrative appeals process. *See* 20 C.F.R. §§ 404.906, 404.966. Beeson's appeal proceeded directly from initial denial to ALJ review.
[3] Fibromyalgia is muscle pain in fibrous tissues. Stedman's Medical Dictionary 222 (4th ed.1976). It is a degenerative disease which results in symptoms such as achiness, stiffness, and chronic joint pain. *See Kelley v. Callahan*, 133 F.3d 583, 585 (8th Cir. 1998)

Beeson's Testimony

Beeson testified that she stopped working for the V.A. because she became sick with histoplasmosis, an infection of the lungs typically caused by exposure to pigeon or bat droppings. Around the same time, her back began hurting, and her fibromyalgia and chronic obstructive pulmonary disease (COPD) started affecting her.

Beeson testified that she had two or three degenerative disks in the cervical (neck) portion of her spine and that her back pain manifests as a burning sensation in her shoulders, primarily affecting her left arm but also extending down her spine and into her legs. As an example of the muscle pain from her fibromyalgia, Beeson stated that if tapped on her arm, the pain would intensify to "10 times before it actually starts fading and goes away." She stated that at one point, she had broken her wrist but did not realize it for four months because of the constant pain. She is currently receiving treatment at a pain center and is prescribed Percocet.

Beeson testified that because her husband is unemployed, he does most of the household chores. However, Beeson does cook simple meals and can wash the dishes if she takes breaks. She stated that on a good day she can stand for 30 minutes before needing to sit; on a bad day, she can stand for 10 minutes. She also said that she has difficulty picking up a cup of coffee. However, Beeson also

testified that when she goes grocery shopping it takes an hour and a half to walk through the store, select her items, and check out. She does this without sitting or resting, although she sometimes will "stop and just stand there if it's getting to me too bad." Beeson clarified that a family member pushes the cart and carries the bags. She goes grocery shopping between one and three times per month.

Beeson testified that she gets out of breath walking from parking lots into buildings and is sensitive to chemicals, cleaning fumes, and the cold. She alternated between sitting and standing during the hearing and testified that it is normal for her to only sit for ten to fifteen minutes at a time in an office chair, although she can sit longer in a more comfortable setting. (Tr. 38–57).

## Testimony of Vocational Expert

The vocational expert (VE) stated that he reviewed Beeson's file and listened to her testimony. The ALJ proffered a hypothetical individual with the following abilities: restriction to light work; lifting twenty pounds only occasionally; frequently lifting ten pounds; difficulty staying in a set position for long periods of time; after a half hour, if she were on her feet, she would have to sit; after sitting for between thirty minutes and forty-five minutes, she would have to stand because of muscle and joint discomfort; but she could alternate between positions. The VE testified that the hypothetical work abilities would be less demanding than Beeson's past work requirements and would be considered semi-

skilled. The VE testified that of semi-skilled jobs, such as a desk, office, or hotel clerk, over 3000 existed in the state economy and over 170,000 in the national economy. He also testified that Beeson had transferrable job skills, including communication skills, medical terminology, patient care, counseling, clerical, recordkeeping, and medical equipment skills. Jobs involving medical skills, such as experience with medical clerical records, numbered over 5000 in the local economy. (Tr. 57–62).

## Medical Evidence Before the ALJ

On April 28, 2008, Beeson's husband called Pheasant Point Physicians and said that he was concerned about his wife's lungs. On May 1, 2008, Beeson reported to Dr. Amy Grawey that she had a fever, felt very fatigued, and was short of breath when walking. On April 8, 2008, a chest x-ray showed that Beeson's heart was not enlarged and that the lung fields were clear, with no evidence of infiltrate. (Tr. 197). An abdomen and pelvis CT scan revealed a nodule in the right lower lung field. (Tr. 201). A stress test had to be terminated after six minutes due to leg fatigue. (Tr. 199). On April 24, 2008, a CT of Beeson's lungs revealed nodules that were found by the radiologist to represent an atypical infectious process. (Tr. 196). On May 28, Beeson reported to St. Joseph Hospital with pain radiating down her left arm. Spinal imaging revealed mild-to-moderate

herniation of the C4-C5 disks, a mild disk bulge at C5-C6, moderate diffuse disk bulge at C6-C7 and mild-to-moderate diffuse disk bulge at T1-T2.

Beeson sought treatment beginning on June 2, 2008, from Gateway Spine, where she was treated by Dr. Tom Reinsel. She presented with pain in her back, neck, and left arm, which she estimated at a 7-8/10. Her neck disability index is "34% indicating moderate disability." She also had shortness of breath, chest pain, cough, arthritis, and fatigue, among other symptoms. Dr. Reinsel prescribed Vicodin for pain, ordered physical therapy, and discussed the possibility of epidural injections and surgery. (Tr. 245).

On June 4, 2008, Beeson began physical therapy, with her chief pain complaint in the cervical and thoracic spines, shooting pains down her left arm to the hand, and finger numbness. She stated her pain was 8/10. She set a number of treatment goals, including decreasing pain, increasing range of motion, and improving arm tenderness. Treatment involved six visits where moist heat, soft tissue and joint mobilizations, exercise, and ice/electrical stimulation were employed. After the six visits, Beeson reported not feeling any symptoms aside from soreness in the cervical spine, and rated her pain at 0/10. She finished physical therapy on June 20, 2008, with a good prognosis and was instructed in home exercise. (Tr. 207–29).

On June 27, 2008, Beeson complained of neck and back pain at a 4-5/10. She was not experiencing significant left arm pain or symptoms, denied upper extremity weakness, and had returned to work on June 9, 2008. Dr. Reinsel noted that her neck symptoms were improving and that Beeson reported that although physical therapy helped, she did not believe further therapy would be useful. (Tr. 242). On July 30, 2008, Beeson complained of neck and shoulder pain, as well as pain in her left arm travelling to her hand and fingertip numbness. Dr. Reinsel's physical examination revealed a normal gait, normal tendon reflexes, normal motor strength in the upper extremity, and normal to light touch in the C5-T1 dermatomes. Dr. Reinsel assessed her with a flare-up of left sided mechanical neck pain and discussed cervical epidurals and her Vicodin use. He noted that she was having other problems, including sleep apnea and drowsiness, and suggested epidurals. (Tr. 240).

Beeson also sought care from Dr. Patrick Sandiford at Pulmonary Disease Consultants, Inc. On May 1, 2008, Dr. Sandiford listed among his impressions Dyspnea, lung nodules, history of bronchospasm r/o COPD, excessive daytime sleepiness, snoring, apnea, and history of tobacco abuse and edema. He recommended a number of tests and exams. On June 5, 2008, Dr. Sandiford noted that her lungs had no dullness to percussion, were clear to auscultation, and had no wheezes. His impressions included dyspnea, lung nodules, excessive daytime

sleepiness, tobacco abuse, cough, and myalgias. Dr. Sandiford referred Beeson to a rheumatologist for potential fibromyalgia and reviewed her tests and labs. On July 22, 2008, Beeson complained of excessive daytime sleepiness and the inability to lie on her stomach. Dr. Sandiford's impressions were: dyspnea, excessive daytime sleepiness, tobacco abuse, snoring, lung nodules, and history of bronchospasms. He noted that she has a slight increase in size and number of nodules and referred her to a surgeon for a lung biopsy. On July 31 through August 4, 2008, Beeson was hospitalized for a diagnostic open lung biopsy. This required a chest tube. (Tr. 253). On September 4, 2008, Dr. Sandiford saw Beeson for dyspnea. He noted that she was still on Itraconazole and included in his recommendations that she "stay off work for now." After a sleep study, Beeson was diagnosed with obstructive sleep apnea, which was treated with a CPAP machine. At her November 4 follow up, Dr. Sandiford noted that Beeson was tearful and had applied for disability. He listed among his impressions: dyspnea, excessive daytime sleepiness, obstructive sleep apnea, lung nodules, history of tobacco abuse, and chronic cough. (Tr. 306–34).

On November 14, 2008, Beeson saw Dr. Reinsel for neck and shoulder pain, which she estimated at a 9/10. Dr. Reinsel noted that Beeson had not worked since August 1, 2008, had been taken off work by her pulmonologist related to her lung biopsy, and has applied for social security disability. Physical examination

revealed normal gait, slight limits in neck range of motion in flexion, significantly diminished neck range of motion in extension, and decreased neck rotation to right and left. He assessed Beeson with mechanical neck pain and some degenerative changes at C4/5 vertebrae. Dr. Reinsel referred Beeson for cervical epidural injections and prescribed Vicodin and Neurontin. (Tr. 343).

On December 4, 2008, Beeson underwent a translaminar cervical epidural injection for treatment of pain. (Tr. 338). On December 19, 2008, Dr. Reinsel reported that her pain has "dramatically improved." Beeson has normal gait and flexion of her cervical spine. He also reported that her neck's extension was substantially better, though still decreased, with normal rotation to left and right. Dr. Reinsel noted that she had applied for social security disability and had not worked since July 31, 2008, and he discussed the possibility of surgery. He assessed her with mechanical neck pain and some C5/5 degenerative changes.

On May 5, 2009, diagnostic imaging read by radiologist Tim Propeck reported that a non-calcified nodule in Beeson's lung remained the same size since last seen on June 27, 2008. Hazy nodules in both lungs had resolved and were related to an inflammatory or to an infectious process. (Tr. 384). On May 12, 2009, Dr. Sandiford noted that Beeson had stopped her Itraconazole in April following nine months of treatment and "seems to be doing well off of that." He noted she was having dyspnea with exertion and denies excessive daytime

sleepiness. His impressions were: dyspnea, COPD, excessive daytime sleepiness, obstructive sleep apnea, and history of pulmonary histoplasmosis and tobacco abuse. (Tr. 390).

A study performed on September 30, 2009 revealed airway resistance consistent with an obstructive abnormality. However, "[c]ompared to a previous study of 5/23/08, there has been no significant change." (Tr. 387). On October 1, 2009, a Registered Nurse working with Dr. Sandiford saw Beeson for Dyspnea and excessive daytime sleepiness. Her impressions were: dyspnea, COPD, excessive daytime sleepiness, obstructive sleep apnea, and history of histoplasmosis and tobacco abuse. She recommended continuing current inhalers and CPAP and a CT scan in May of 2010. (Tr. 389).

## The ALJ's Decision

In the decision issued on July 20, 2010, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since July 28, 2008, the alleged disability onset date.

3. The claimant has the following severe impairments (in combination): Degenerative Disk Disease (Spine), Histoplasmosis, Chronic Obstructive

Pulmonary Disease (COPD), Dyspnea, Obstructive Sleep Apnea, Excessive Daytime Sleepiness, and Obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567(b) except that the claimant has difficulty staying in a set position for a long period of time. After a half hour of time on her feet, she would need to sit down. Similarly, after 30-45 minutes of sitting, she would need to get back up. As such, she needs a job that would allow her to alternate positions as stated above.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on September 16, 1960, and was 47 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. The claimant has acquired work skills from past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past

relevant work that are transferrable to other occupations with jobs existing in significant numbers in the national economy.

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 28, 2008, through the date of this decision.

(Tr. 26–32).

## Legal Standards

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome. *Id.* Nor may the court reverse because the court would have decided the case differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that supports it." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)). Where the Commissioner's findings represent one of two inconsistent conclusions that may

reasonably be drawn from the evidence, however, those findings are supported by substantial evidence. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (internal citation omitted).

To determine whether the decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

> (1) credibility findings made by the Administrative Law Judge;
> (2) the claimant's age, education, background, and work history;
> (3) medical evidence from treating and consulting physicians;
> (4) the claimant's subjective complaints relating to exertional and nonexertional impairments;
> (5) any corroboration by third parties of the claimant's impairments; and
> (6) testimony of vocational experts, when required, which is based upon a proper hypothetical question.

*Brand v. Secretary of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five step procedure.

First, the Commissioner must decide if the claimant is engaging in substantial gainful activity. If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(b).

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 1520(C). If the claimant's impairment is not severe, she is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or on medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant has the Residual Functional Capacity (RFC) to perform her past relevant work. If the claimant can perform her past relevant work, she is not disabled.

If the claimant cannot perform her past relevant work, the burden of proof shifts and the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant

disabled. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 20 C.F.R. § 404.1520.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See e.g.*, *Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include: "(1) the claimant's daily activities; (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain; (3) any precipitating or aggravating factors; (4) the dosage, effectiveness and side effects of any medication; and (5) the claimant's functional restrictions." *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (citing *Polaski*, 739 F.2d at 1322). When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). The ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

**Discussion**

On appeal, Beeson raises several issues. First, Beeson alleges that the ALJ's RFC determination is not supported by substantial evidence. Second, Beeson argues that the ALJ made improper credibility determinations. Because the ALJ erred in his RFC determination, I will only address that issue.

The RFC is a function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence. *Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004). The claimant bears the burden of proving RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (9th Cir. 2003). Nonetheless, the ALJ must determine a claimant's RFC based upon all relevant evidence in the record, including the individual's own description of her limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The RFC is a medical question, and some evidence must support the determination of the claimant's ability to work. *Baldwin*, 349 F.3d at 556 (citations omitted).

The record lacks substantial medical evidence from which the ALJ could determine the extent to which her pulmonary issues affected her ability to work. On September 4, 2008, Beeson presented to the Pulmonary Disease Consultants for dyspnea. Dr. Sandiford recommended that Beeson "stay off work for now," and scheduled follow up appointments. (Tr. 317). At her next visit in November, Dr. Sandiford noted that Beeson had applied for disability, but he made no opinion as

to her ability to work. (Tr. 315). Following her treatment for histoplasmosis, Dr. Sandiford noted that Beeson "seems to be doing well" and has "some dyspnea with exertion." (Tr. 390). However, there is no indication that any of Beeson's doctors released her back to work. In fact, the Commissioner admits that the record contains no formal RFC assessments. Brief in Support of Answer at *16.

In determining the effect that Beeson's dyspnea, COPD, and other lung and breathing issues have upon her RFC, the only medical evidence upon which the ALJ relied consisted of medical reports. (Tr. 29). While these reports noted that the hazy nodules in Beeson's lungs had resolved, and that there was "no active disease" (Tr. 400), they also included diagnoses of dyspnea. No physician ever opined as to the effect that Beeson's conditions might have on her ability to work. The ALJ used the lack of medical opinions regarding functional limitations as additional evidence that Beeson could work.

*Lauer v. Apfel* is instructive. 245 F.3d 700 (8th Cir. 2001). In *Lauer*, the Eighth Circuit found that the ALJ improperly relied upon silence as to disability by the claimant's treating psychiatrist in finding the claimant not disabled. *Id.* at 704–05. Notably, the ALJ relied on the absence of medical evidence after disregarding the opinions of other treating and consulting doctors that the claimant was "incapacitated" and that all of her work activities were severely limited. *Id.* at 704.

The court held that the absence of medical opinions sufficient to help him form an opinion, the ALJ should have further developed the record. *Id.* at 706.

Here, as in *Lauer*, there existed an opinion from a treating physician that Beeson could not work. Although the physician's opinion here was not as definitive as in that case and came before Beeson completed treatment for one of her pulmonary conditions, the ALJ did not even address the opinion. Instead, he reached the conclusion that Beeson could perform light work with some adjustments, in part, by citing the dearth of opinions as to Beeson's ability to perform work. This was improper.

The ALJ also interpreted Beeson's diagnostic reports and found that the reports indicated that Beeson's pulmonary conditions had resolved to the point that she could work. But inferences that the ALJ made from medical reports, standing alone, do not qualify as substantial evidence in support of the RFC determination. *See Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) ("An administrative law judge may not draw upon his own inferences from medical reports.") (quoting *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975) (other citations omitted)).

The problems inherent in the ALJ's determination are compounded by his reference to the disability examiner as a physician and his decision to grant that

examiner's report "substantial weight."[4] (Tr. 30, 362–67). The Commissioner concedes that the ALJ should not have given any weight to the examiner's opinion. The Commissioner argues, however, that the reliance upon the examiner was harmless. Given the limited medical evidence in this opinion as to the extent that Beeson's pulmonary condition affects her ability to work, and the failure of the ALJ to acknowledge that at least one of Beeson's physicians had ordered her to stop working for some time, I cannot say that the ALJ inevitably would have reached the same result had he disregarded the examiner's report. The RFC determination is not supported by substantial evidence.

Because the ALJ's RFC determination is not supported by substantial evidence, I will remand this case. I would remind the ALJ that if there are no post-treatment medical opinions about Beeson's ability to function in the workplace, the ALJ should obtain a consultative evaluation to determine the effects Beeson's impairments have on her ability to be employed. *Nevland*, 204 F.3d at 858.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is reversed and the case is remanded to the Commissioner pursuant to sentence four

---

[4] The examiner, a single decision maker, signed the report in the area designated as the medical consultant. Even if the disability examiner was a physician, the examiner's RFC determination would not normally constitute substantial evidence, because the examination was not the result of any comprehensive or even first-hand examination. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999).

of 42 U.S.C. § 405(g) for further development of the record as to the claimant's residual functional capacity.

A separate judgment in accord with this Memorandum and Order is entered this date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of March, 2014.